UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FREDERIC POWELL,

                Petitioner,

      - v -

UNITED STATES OF AMERICA,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - x

           10 Cr. 243 (VM)
           12 Civ. 7089 (VM)

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANT FREDERIC POWELL'S MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT HIS CONVICTION

                PREET BHARARA
                United States Attorney for the
                Southern District of New York
                One St. Andrew's Plaza
                New York, New York 10007

JUSTIN ANDERSON
Assistant United States Attorney
    *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ..................................................................................................... 1

ARGUMENT

    A.  POWELL'S SECTION 2255 MOTION IS PROCEDURALLY BARRED .............. 6

    B.  POWELL'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS
        LACK FACTUAL AND LEGAL SUPPORT ........................................................ 12

CONCLUSION ..................................................................................................... 22

## PRELIMINARY STATEMENT

The Government respectfully submits this response to the habeas petition (the "Petition") filed by Frederic Powell ("Powell") pursuant to Title 28, United States Code, Section 2255. In the Petition, Powell seeks (i) to vacate his plea, sentence, and conviction for conspiracy to commit wire fraud and bank fraud in its entirety or, in the alternative, (ii) to reduce his sentence. Powell seeks this relief based on unsubstantiated, self-serving allegations of ineffectiveness of defense counsel. Powell's claim finds no support whatsoever in the relevant facts or applicable law. Accordingly, the Petition should be denied without an evidentiary hearing.

## BACKGROUND

**A.      The Offense Conduct and the Indictment**

From at least 2004 to 2007, Powell, an attorney, along with others including Vaughn Richmond ("Richmond") and Marilyn John ("John"), conspired to and did obtain money and property through fraudulent mortgage loan applications. (PSR ¶¶ 20-51).[1] As part of the scheme to defraud, Richmond recruited straw purchasers to act as applicants for home mortgage loans. (PSR ¶ 22). Powell and Richmond submitted mortgage applications on behalf of these straw purchasers that contained false and misleading information in order to induce lenders to make loans under terms they otherwise would not have agreed to. (PSR ¶ 21). The loan applications contained false and misleading information concerning the straw purchasers' employment, income, and assets. (PSR ¶ 23). In some instances, Powell and Richmond represented to the lending institutions that the straw purchasers intended to reside primarily in the properties for

---

[1] "PSR" or "Presentence Report" refers to the Presentence Investigation Report prepared by the United States Probation Office (the "Probation Office") in connection with Powell's sentencing.

which they submitted loan applications, when, in fact, the co-conspirators intended to rent out the properties. (PSR ¶ 24).

For his part, Powell served as the closing agent for at least five fraudulent real estate transactions. (PSR ¶¶ 27-51). In that capacity, he assisted in the preparation of fraudulent closing forms and other submissions to lenders. (PSR ¶ 27). Powell submitted, among other things, a HUD-1 form that misstated the purchase price of a target property (PSR ¶ 29) and loan applications that misstated straw purchaser John's income and residence. (PSR ¶¶ 34-37, 43-46). In all, Powell and his co-conspirators fraudulently obtained home mortgage loans with a total face value of more than $6,000,000. (PSR ¶ 20). The loss attributed to Powell was between $1,000,000 and $2,500,000. (PSR ¶ 53).

On March 19, 2010, Indictment 10 Cr. 243 (VM) (the "Indictment") was filed in the Southern District of New York. (PSR ¶ 1). The Indictment charged Powell with one count of conspiracy to commit wire and bank fraud in violation of Title 18, United States Code, Section 1349. (PSR ¶ 2). It also called for the forfeiture of at least $6,071,000, representing the proceeds obtained as a result of the charged offense. (PSR ¶ 3).

**B.      The Plea Agreement and the Guilty Plea**

On April 21, 2011, Powell appeared before the Honorable Frank Maas, to whom this matter had been referred, and pleaded guilty to Count One of the Indictment pursuant to a written plea agreement ("the Agreement") with the Government. (PSR ¶ 5). In the Agreement, Powell stipulated with the Government that the loss associated with the offense was between $1,000,000 and $2,500,000; the amount of forfeiture representing the amount of proceeds obtained by the defendant as a result of the offense was $110,089; his Criminal History Category was II; his total offense level was 22; and his advisory sentencing range under the United States Sentencing

- 2 -

Guidelines was 46 to 57 months' imprisonment. (Agreement 1-3).[2] Powell's Criminal History

Category was calculated based on two prior convictions: (i) a March 29, 2011 conviction for

Grand Larceny in New York County Court, Nassau County, and (ii) a conviction for Attempted

Bribery of a Public Servant, in the same court on the same day. (*Id.* at 3.).

      The parties further agreed that "neither a downward nor an upward departure from the

Stipulated Guidelines Range [was] warranted." (*Id.*). Nevertheless, both parties reserved the right

to seek a sentence outside the range "based upon the factors . . . [set forth in] Title 18, United

States Code, Section 3553(a)." (*Id.*). The Agreement also contained an appellate waiver. (*Id.* at

4-5). Specifically, the parties "agreed (i) that [Powell] will not file a direct appeal; nor bring a

collateral challenge, including but not limited to an application under Title 28, United States

Code, Section 2255 and/or Section 2241 . . . of any sentence within or below the Stipulated

Guidelines Range of 46 to 57 months' imprisonment." (*Id.* at 4).

      During the plea allocution, the adequacy of which the defendant has never challenged,

Judge Maas complied in all respects with Rule 11 of the Federal Rules of Criminal Procedure.

Among other matters, Judge Maas confirmed that: (1) Powell was competent to enter a plea of

guilty; (2) he was aware of the charges against him as well as the maximum penalties associated

with those charges; (3) he was aware of the constitutional rights that he was waiving by entering

a plea of guilty, including the right to a trial; and (4) a factual basis existed for the plea. (Plea Tr.

3-14).[3] When asked if he was satisfied with the representation furnished by defense counsel,

Powell replied, "I am." (*Id.* at 4-5). Powell also explicitly confirmed that he was familiar with the

---

[2] The Plea Agreement is attached as Exhibit A.
[3] The transcript of the guilty plea proceeding is attached as Exhibit B.

- 3 -

Agreement, that he and his attorney signed it, and that he discussed the terms of the Agreement with counsel. (*Id.* at 11).

Judge Maas also confirmed that Powell understood that by pleading guilty he agreed "not to appeal from or otherwise collaterally challenge any sentence of 57 months or less." (*Id.* at 11-12). Powell then admitted to knowingly engaging in a scheme to defraud federally insured financial institutions. (*Id.* at 12-13). Specifically, Powell stated that he was "aware that the financial institutions due to my actions . . . lost between $1 million and $2 and a half million." (*Id.* at 13).

## C.     The Sentencing

Following Powell's guilty plea, the Probation Office prepared a Presentence Report that included a Guidelines calculation identical to that set forth in the Agreement. (PSR ¶ 115). The Probation Office recommended a sentence of 51 months' imprisonment, near the middle of the Guidelines range, based on Powell's conduct in the instant offense. (*Id.* at 22). The Probation Office recommended no fine, finding that Powell's financial resources should be directed towards restitution. (*Id.* at 23).

On September 7, 2011, defense counsel submitted Powell's sentencing memorandum, in which he asked the Court to impose a sentence less than the applicable guidelines range of 46-57 months' imprisonment. (Def. Sent. Mem. 1).[4] Defense counsel listed numerous reasons justifying such a downward variance, including (1) Powell's family responsibilities as the primary provider for his wife and children; (2) that no one was physically hurt in connection with Powell's offense conduct; (3) that prior to the fraud Powell had worked hard to establish a successful solo law practice and was always willing to help colleagues and clients; (5) Powell's

_____

[4] Powell's sentencing memorandum is attached as Exhibit C.

- 4 -

remorse; (6) that his criminal prosecution had financially devastated Powell and his family; (7) Powell's depression and anxiety; and (8) that there was a low risk of recidivism. (*Id.* at 3-9). Defense counsel also submitted letters from his wife and children, friends and colleagues and rabbi. (*Id.* at 3-4). In response, the Government submitted a letter in which it requested a sentence within the applicable guidelines range in light of the seriousness of the offense, Powell's other misconduct, and Powell's status as an attorney. (Gov. Sent. Mem. 2-3).[5]

Powell appeared before the Court for sentencing on September 23, 2011. The Court confirmed that Powell had discussed the Presentence Report with counsel, and that the defense had no objections to it. (Sent. Tr. 3).[6] Defense counsel then addressed the court, describing Powell's crimes as a "tragic story." (*Id.* at 5). The defense did not object to Powell's Criminal History Category of II, but indicated that Powell's state crimes, as well as the instant crime, were products of the desperate situation Powell encountered as a result of the collapse of the real estate market. (*Id.* at 5). Defense counsel noted that Powell's spate of crimes was uncharacteristic of Powell's behavior before the market collapse, when he was a successful practicing attorney. (*Id.* at 5-6).

Defense counsel then described Powell as a "family man," calling attention to the presence of Powell's wife and children in the courtroom, and declaring that Powell "[was] not at risk of being a repeat offender, [nor] at risk of becoming a recidivist." (*Id.* at 6-7). Finally, defense counsel asked the Court to vary from the stipulated guidelines range, and impose a sentence between 30 and 32 months' imprisonment. (*Id.* at 7). Defense counsel submitted that

---

[5] The Government's sentencing memorandum is attached as Exhibit D.
[6] The transcript of the sentencing proceeding is attached as Exhibit E.

the average sentence for a fraud case nationwide was between 30 and 40 months, and Powell's case was not "one-and-a-half times worse than the [average fraud case]." (*Id.*).

After hearing from both Powell and his wife, the Court adopted the guidelines range set forth in the PSR and the Agreement and sentenced Powell to a 48-month term of imprisonment. (*Id.* at 10-11). The Court noted that Powell's crimes were "exceedingly serious," long-standing, and caused loss in excess of $1 million. (*Id.* at 11). The Court then specifically addressed defense counsel's contention that Powell's crimes were the product of desperate financial times. (*Id.* at 11-12). The Court noted that, while the collapse of the real estate market and ensuing financial crisis occurred in 2008, Powell's criminal conduct began in 2004, and had been consistent over seven years. (*Id.* at 12). The Court also responded to defense counsel's assertion that the average sentence for fraud nationwide was 30 to 40 months, and noted that Powell's case was not average "in several respects." (*Id.*). The Court noted that the criminal conduct lasted three years, was very complicated, and involved a "very, very large" amount of money. (*Id.*). The Court also pointed to Powell's other criminal conduct, as well as his status as an attorney and officer of the court. (*Id.* at 12-13).

**D.      The Direct Appeal**

Powell did not appeal his conviction or sentence.

## ARGUMENT

**A.      Powell's Section 2255 Motion Is Procedurally Barred.**

**1.      Applicable Law**

**a.      Waivers of Appellate and Collateral Review**

"Waivers of the right to appeal a sentence are presumptively enforceable." *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010). "So long as they are knowing and voluntary, such

waivers 'must be enforced because, if they are not, the covenant not to appeal becomes

meaningless and would cease to have value as a bargaining chip in the hands of defendants.'"

*United States v. Williams*, 448 F. App'x 156, 157 (2d Cir. 2012) (quoting *United States v.*

*Granik*, 386 F.3d 404, 412 (2d Cir. 2004)).

      Where a defendant pled guilty voluntarily and knowingly pursuant to a plea proceeding

that complied with Rule 11 of the Federal Rules of Criminal Procedure, the Second Circuit has

consistently and "expressly rejected attempts by [the] defendant[] to circumvent the waiver of

the right to appeal by claiming ineffective assistance of counsel." *United States v. Checo*, 205

F.3d 1325, 1999 WL 1253982, at *1 (2d Cir. 1999). This is because "statements at a plea

allocution carry a strong presumption of veracity," *United States v. Torres*, 129 F.3d 710, 715

(2d Cir. 1997) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), and "are generally treated

as conclusive in the face of the defendant's later attempt to contradict them." *United States v.*

*Grzybek*, 283 F. App'x 843, 845 (2d Cir. 2008) (quoting *Adames v. United States*, 171 F.3d 728,

732 (2d Cir. 1999)); *see also Checo*, 503 F.3d 1325, 1999 WL 1253982, at *1 (rejecting claims

of ineffective assistance where "the plea proceeding comported with Rule 11").  Furthermore, no

evidentiary hearing is necessary where, in light of the defendant's plea, the allegations in the

defendant's habeas motion "merely contradict the record, are inherently incredible, or are simply

conclusory." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992).

      The Supreme Court's recent decision in *Missouri v. Frye*, 132 S. Ct. 1399 (2012), which

extended the Sixth Amendment right to effective assistance of counsel to the context of plea

discussions, reaffirmed these principles. According to the Supreme Court, it is precisely because

plea discussions often occur informally and off-the-record that defendants need the effective

assistance of counsel to vindicate their constitutional rights and ensure their fair treatment. *Frye*,

- 7 -

132 S. Ct. at 1407. Where an attorney failed to communicate a plea offer to a client, there would be, by definition, no "formal court appearance with the defendant and all counsel present" where the trial judge could "remedy" the attorney's dereliction. *Id.* at 1406-07.

In contrast, where a defendant *accepted* a guilty plea in open court in a plea proceeding under Rule 11, the plea proceeding "affords the [Government] substantial protection against later claims that the plea was the result of inadequate advice." *Id.* at 1406. As the Supreme Court explained:

> At the plea entry proceedings, the trial court and all counsel have the opportunity to establish on the record that the defendant understands the process that led to any offer, the advantages and disadvantages of accepting it, and the sentencing consequences or possibilities that will ensue once a conviction is entered based upon the plea. . . . [T]here may be instances when claims of ineffective assistance can arise after the conviction is entered. Still, the [Government], and the trial court itself, have had a substantial opportunity to *guard against this contingency by establishing at the plea entry proceeding that the defendant has been given proper advice or, if the advice received appears to have been inadequate, to remedy that deficiency before the plea is accepted and the conviction entered.*

*Id.* at 1406-07 (emphasis added).

A recently decided case, *Rosales v. Artus*, 2011 WL 3845906 (E.D.N.Y. Aug. 30, 2011), illustrates the legal principles discussed above. In that case, the defendant, claiming ineffective assistance of counsel, sought to withdraw his guilty plea because his attorney had allegedly failed to advise him about the immigration consequences of a felony conviction. *Id.* at *9. In the plea allocution, however, the judge specifically asked the defendant whether he understood that, "by pleading guilty in this case[,] your plea may result in deportation or a denial of your naturalization." *Id.* at *10. The defendant answered, "Yes." *Id.*

In light of this allocution, the judge rejected the defendant's attempt to withdraw his plea

based on the "self-serving statements in his motion papers," stating that "it is well-settled that self-serving allegations of ineffective assistance of counsel are not enough to overturn a knowing and voluntarily guilty plea." *Id.* at *9 (internal quotation marks and citation omitted). The Court explained that, even were it to accept the defendant's self-serving statements about his counsel's performance, the defendant could not have been prejudiced in any way under *Strickland v. Washington*, 466 U.S. 668 (1984), because any attorney error "was rectified by the trial court's questioning during petitioner's plea allocution." *Id.* at *10.

### b.  Procedural Default

It is well-settled that "[a] § 2255 petition may not be used as a substitute for direct appeal." *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)). Hence, a collateral challenge brought under Section 2255 is subject to the "procedural default rule," which "prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice." *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010); *see also Marone*, 10 F.3d at 67 ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error."); *Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992) ("[F]ailure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice.").

To establish cause under the "cause and prejudice" test, the petitioner must ordinarily show that "some external impediment prevent[ed] counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). For example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by

- 9 -

officials' . . . made compliance impracticable, would constitute cause under this standard." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray*, 477 U.S. at 488). Accordingly, cause "must be something *external* to the petitioner, something that cannot be fairly attributed to him." *Marone*, 10 F.3d at 67 (quoting *Coleman*, 501 U.S. at 753) (emphasis in original).

The element of prejudice requires "not merely that the errors . . . created a possibility of prejudice, but that they worked to [a defendant's] actual and substantial disadvantage, infecting [the] entire [case] with error of constitutional dimensions." *Femia v. United States*, 47 F.3d 519, 524 (2d Cir. 1995) (quoting *Frady*, 456 U.S. at 170).

### 2.  Discussion

In his Petition, Powell challenges his conviction and sentence solely pursuant to Title 18, United States Code, Section 2255. That challenge runs afoul of the waiver provision of his plea agreement with the Government pursuant to which, Powell agreed not to litigate "under Title 28, United States Code, Section 2255 . . . any sentence within or below the Stipulated Guidelines Range of 46 to 57 months' imprisonment." (Agreement 4). As Powell was sentenced at the low end of that range to 48 months' imprisonment, the waiver provision bars the Petition.

Powell presents the Court with no valid reason not to enforce the waiver. Powell accepted the waiver knowingly and voluntarily at the time he signed the Agreement and pled guilty in open court. The magistrate judge explained the nature of the waiver to Powell during the plea allocution, asking Powell specifically whether he understood that "in th[e] letter agreement [Powell had] agreed not to appeal from or otherwise collaterally challenge any sentence of 57 months or less." (Plea Tr. 11-12). Powell, under oath, answered "Yes." (*Id.*).

At his plea allocution, Powell, who was under oath, assured the magistrate judge that he

- 10 -

was pleading guilty "voluntarily" and "of [his] own free will"; that he was satisfied with trial counsel's representation of him; that he discussed the charges thoroughly with his attorney; that he reviewed the Agreement with his attorney; and that he was aware that he was facing a maximum sentence of 30 years' imprisonment and a fine of one million dollars or twice the amount of money obtained through this crime or twice the amount of financial loss caused to others as a result of this crime. (Plea Tr. 4-6, 11-12). Powell also assured the magistrate judge, again under oath, that he was "aware that" his actions caused losses "between $1 million and $2 and a half million" to his victims. (*Id.* at 13). In short, the record is plain that Powell entered into the Agreement, including the waiver provision, knowingly, voluntarily, and intelligently.

In the face of this evidence, Powell seeks to circumvent the waiver by alleging that his attorneys gave him bad advice and, in the absence of that advice, he would not have accepted the Agreement. (Powell Aff. ¶ 22). Powell's self-serving allegations should be rejected under Second Circuit precedent that bars defendants from "circumvent[ing] the waiver of the right to appeal by claiming ineffective assistance of counsel," *Checo*, 205 F.3d 1325, 1999 WL 1253982, at *1, and by lodging self-serving allegations against attorneys that "contradict the record [of the plea], are inherently incredible, or are simply conclusory." *Gonzalez*, 970 F.2d at 1100. Even if defense counsel had misstated the terms of the agreement, however, any such error "was rectified" by the magistrate judge's explicit questioning of Powell during the plea allocution. *Rosales*, 2011 WL 3845906, at *10. As the Court has before it a copy of the plea transcript containing the defendant's own statements, which "carry a strong presumption of veracity," *Torres*, 129 F.3d at 715, and "are conclusive absent credible reason justifying departure from their apparent truth," *United States v. Applebaum*, 1995 WL 723348, at *10 (S.D.N.Y. Dec. 7, 1995) (internal quotation marks and citation omitted), an evidentiary hearing is unnecessary. The

- 11 -

waiver provision in the plea agreement is a complete answer to Powell's habeas petition, as it decisively precludes his attempt to collaterally attack his sentence, which falls at the low end of the Stipulated Guidelines Range.

For similar reasons, the doctrine of procedural default bars Powell's challenge to his conviction. Where, as here, a defendant agreed to waive his right to appeal or collaterally attack his conviction in a plea agreement, and where the defendant swore in his plea allocution that he understood the consequences of the waiver provision (Plea Tr. 11-12), he cannot show good cause for the procedural default. Indeed, Powell has not offered any reason for his failure to file an appeal, much less one that one would constitute an "external impediment" that "cannot be fairly attributed to" the defendant's own conduct. *Murray*, 477 U.S. at 492; *Marone*, 10 F.3d at 67. Moreover, as explained in further detail below, Powell also cannot show "prejudice," for the simple reason that any appeal of his conviction would have been futile and frivolous.

**B.    Powell's Ineffective Assistance of Counsel Claims Lack Factual and Legal Support**

    **1.   Applicable Law**

A habeas petitioner claiming ineffective assistance of counsel must: (1) demonstrate that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice" as a result of counsel's allegedly defective performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693 (1984); *see Hernandez v. United States*, 202 F.3d 486, 488 (2d Cir. 2000). Only if both of these elements are satisfied can a petitioner demonstrate that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

The burden for a petitioner under the *Strickland* standard is high. There is a "strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see Berry v. Ercole*, 391 F. App'x 87, 89 (2d Cir. 2010) ("[T]here is a 'strong presumption' that the attorney in question provided, if not ideal representation, then at least competent assistance, which obligates the reviewing court to adopt a deferential posture."). In addition, if the petition fails under either prong of the test, it must be denied. *See Strickland*, 466 U.S. at 697. As explained by the Second Circuit in *Lindstadt v. Keane*, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." 239 F.3d 191, 199 (2d Cir. 2001).

Under the first prong of the *Strickland* analysis, the reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). As the Supreme Court cautioned in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

466 U.S. at 689 (citations omitted). In this context, it is well established that an attorney does not provide ineffective assistance simply by declining to advance an argument that lacks merit. *See,*

- 13 -

*e.g.*, *Aparicio v. Artuz*, 269 F.3d 78, 99 n.10 (2d Cir. 2001) ("Because the . . . claim was meritless, Petitioner's trial counsel was not ineffective for failing to raise it."); *United States v. Kirsh*, 54 F.3d 1062, 1072 (2d Cir. 1995); *United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir. 1992), *cert. denied*, 506 U.S. 979 (1992).

To satisfy the prejudice prong of *Strickland*, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 694). A petitioner cannot establish prejudice by showing merely that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693.

When considering these two prongs, the Supreme Court has provided commonsense instructions, explaining that "[t]he object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. Applying this teaching, the Second Circuit has often rejected ineffectiveness claims by determining that, in view of the strength of the prosecution's case, the defendant is unable to establish prejudice. *See, e.g.*, *United States v. Kone*, 303 F. App'x 38, 40 (2d Cir. 2008).

A petitioner's allegation that defense counsel was ineffective during plea negotiations is subject to the same standards set forth above. In *Premo v. Moore*, the Supreme Court emphasized that, when evaluating *Strickland*'s performance prong in the context of plea negotiations, defense

- 14 -

counsel's actions must be viewed with substantial deference because of the negotiations' complexity, the absence of an adequate record for subsequent review, and the need to preserve the finality of convictions. 131 S. Ct. 733, 741-42 (2011). In reaching that decision, the Supreme Court first observed that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Id.* at 741. Defense counsel is rarely in a position to know with certainty whether an early plea to a lesser-included offense will yield a more favorable result than delaying a resolution on the chance, for example, that the prosecution's case will fall apart.

Second, the Supreme Court observed that "the record at the pretrial stage is never as full as it is after a trial," so it is exceedingly difficult for a reviewing court to gauge whether defense counsel could have done a better job during plea negotiations. *Id.* Third, the sound administration of justice would also be impaired by post hoc evaluations of whether defense counsel obtained the best deal possible for a given defendant. As the Supreme Court explained, "[p]rosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland.*" *Id.* at 742. Failing to apply *Strickland* rigorously in the context of evaluating defense counsel's performance during plea bargaining would introduce uncertainty into that process and undermine justice. "The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one." *Id.* For these reasons the Supreme Court has required the strict application of *Strickland*'s performance prong to claims that defense counsel was ineffective during plea negotiations.

- 15 -

With respect to the prejudice prong in this context, the Supreme Court has established that where a defendant seeks to withdraw his plea on the basis of ineffective assistance of counsel, he must demonstrate, *inter alia*, that but for the ineffective assistance, he would not have entered the plea. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). The Supreme Court's recent ruling in *Frye* did not alter this requirement. 132 S. Ct. at 1409 ("In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

### 2.  Discussion

Powell faults defense counsel's performance during plea negotiations and at sentencing. Powell alleges defense counsel erred in (a) advising Powell to plead guilty to then-pending state charges, (b) advising Powell he could contest loss amount at sentencing, and (c) failing to present evidence at sentencing that the loss was below $1 million. All of these allegations fall far short of the *Strickland* standard.

### a.  The State Charges

Powell alleges that defense counsel was ineffective for advising him to plead guilty to then-pending state charges, thereby increasing his criminal history points under the Guidelines. (Affidavit of Frederic Powell dated Sept. 11, 2012 ("Powell Aff.") ¶¶ 10-14). According to Powell, defense counsel advised him to enter guilty pleas to the state court charges "'to clean [him] up' before completing the Federal plea negotiations."  (*Id.* ¶¶ 10, 12).  Powell believes that

his guilty pleas "had no rational basis" and did nothing more than "increase[] [his] [f]ederal sentencing guideline calculation." (*Id*. ¶ 14).

While Powell might now believe, based on hindsight, that it might have been wiser to proceed to sentencing with three open criminal cases in state court, the decision to resolve those cases in advance of sentencing fell well within the range of appropriate defense strategies under *Strickland*. Indeed, it was reasonable for defense counsel to seek to resolve those cases, so that he could argue to the Court that Powell had put his mistakes behind him and to demonstrate further Powell's acceptance of responsibility. In keeping with that strategy, defense counsel attempted to mitigate the effect of Powell's elevated criminal history categorization and leverage the resolution of those charges to Powell's advantage. In his sentencing memorandum, defense counsel argued the state court charges were related to the federal charge and that aside from these isolated actions "were the actions of a desperate man, not a seasoned criminal." (Def. Sent. Mem. 9). Defense counsel reiterated this argument at sentencing. (Sent. Tr. 5-6 (arguing both the state and federal crimes are "an indication of that desperate time and those desperate measures")). On this record, defense counsel's strategy was not ineffective under the *Strickland* standard. Indeed, it is entrusted to the discretion of defense counsel to choose a legal strategy and that decision is entitled to deference when challenged. *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). In light of the broad discretion afforded defense counsel in this regard, Powell's critique of defense counsel's advice about how best to handle the pending state criminal charges fails to satisfy the first prong of *Strickland*.[7]

---

[7] It is also far from clear that any remedy exists in *this forum* for the allegedly bad advice Powell received. This Court has no power to vacate Powell's guilty pleas in state court, and even if his conviction here were vacated, his criminal history category would remain unchanged at II. Moreover, Powell has failed to demonstrate any prejudice in connection with his guilty plea in

### b.  The Agreement's Loss Amount

Powell also accuses defense counsel of advising him that "[they] could contest the

amount of loss at the time of sentencing," notwithstanding a stipulation as to the loss amount in

the Agreement. (Powell Aff. ¶ 17 ). Powell alleges that he signed the Agreement "[a]s a result of

[his] attorneys['] advice concerning the future ability to contest the amounts of loss calculated in

the plea agreement" and that his "attorney never advised [him] that, in fact, in the plea agreement

he was stipulating to a loss of between $1,000,000.00 and $2,500,000.00." (*Id.* ¶¶ 18-19).

Powell's new, self-serving allegations are flatly contradicted by his sworn statements at the time

he entered his plea, and these recent allegations should be rejected as pure fabrication.[8] During

his plea allocation, Powell stated under oath that he was "aware that the financial institutions due

to [his] actions . . . lost between $1 million and $2 and a half million." (Plea Tr. 13). Powell also

stated under oath that he had discussed the Agreement, which explicitly stated the "the loss

exceeds $1,000,000, but does not exceed $2,500,000," with counsel before signing it. (Plea Tr. 2-

3; Agreement 2). Under well-settled precedent, Powell's self-serving allegations of defense

counsel's inaccurate advice and his own purported misunderstandings should be rejected because

they are contrary to his sworn statements during the plea allocation, which are presumed to be

*this case* because he has not stated that, properly advised, he would have refused to plead guilty
and proceeded to trial. *See Frye*, 132 S. Ct. at 1409 ("In cases where a defendant complains that
ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the
defendant will have to show a reasonable probability that, but for counsel's errors, he would not
have pleaded guilty and would have insisted on going to trial.").

[8] In light of the baselessness of Powell's allegations, his prior defense counsel has not
filed an affidavit in opposition to the Petition. If the Court determines that the resolution of this
Petition requires an affidavit from defense counsel, it can order that such an affidavit be filed.
*See, e.g.*, *Azzara v. United States*, 2011 U.S. Dist. LEXIS 10971, at *5 (S.D.N.Y. Feb. 1, 2011)
(finding defendant had waived the attorney client privilege as a matter of law by filing an
ineffective assistance claim and ordering defense counsel to provide an affidavit addressing the
allegations).

accurate.[9] S*ee United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008) (affirming district court's denial of habeas petition where "the defendant's unequivocal admissions under oath [during the plea allocution] contradict his conclusory assertions [in support of his habeas petition]").

As for the prejudice prong, Powell's assertions of his "tremendous level of remorse for his actions and accept[ance] of full responsibility" (Def. Sent. Mem. 1) indicate that he would have pleaded guilty regardless of whether he understood that he could not contest loss amount at sentencing. In addition, Powell does not state anywhere in his affidavit that, had he been properly advised, he would have refused to plead guilty and proceeded to trial. *Doe*, 537 F.3d at 214 ("[T]he defendant has never asserted unequivocally that absent trial counsel's alleged failings, he would have proceeded to trial. Accordingly, he has advanced no colorable claim that his plea was rendered involuntary as a result of trial counsel's ineffective assistance."). Taken together, these factors demonstrate the absence of prejudice under Supreme Court precedent. *See Frye*, 132 S. Ct. at 1409 ("In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").[10] Powell's allegations fail both prongs of *Strickland*.

---

[9] Powell's contention that he did not understand the scope of the Agreement is particularly unconvincing given that he earned a J.D. and practiced law for 26 years. (Def. Sent. Mem. 3).

[10] It also bears noting that, during the plea allocution, the magistrate judge asked Powell whether he was "satisfied with the representation and the advice that counsel ha[d] furnished to" him and Powell said that he was. (Plea Tr. 4-5).

### c.  Sentencing Advocacy

Powell also complains of defense counsel's failure to contest loss amount and restitution at sentencing. (Powell Aff. ¶¶ 23-24). As Powell appears to recognize, however, any such arguments would have violated the Agreement (Powell Aff. ¶ 23) and been contrary to Powell's own sworn statements during the plea allocution. Indeed, the parties stipulated in the Agreement that the loss was between $1 million and $2.5 million. (Agreement 2). The Presentence Report adopted the same loss amount. (PSR ¶¶ 53, 59). That loss amount is the same figure that Powell swore was accurate during his plea allocution. (Plea Tr. 13). Powell's belief that defense counsel should have taken a different position on loss and restitution at sentencing – in violation of the Agreement and Powell's own sworn statements – is absurd. Doing so would have been a far less sound course of action than that pursued by defense counsel.

Powell's arguments are particularly frivolous as the loss amount in the Agreement and Presentence Report was the product of zealous advocacy by defense counsel. As noted above, the Indictment alleged a loss of over $6 million. Prior to executing the Agreement, defense counsel and the Government engaged in lengthy, detailed discussions about the appropriate measure of loss, restitution and forfeiture. For example, the parties discussed and came to an agreement on which properties were properly within the scope of Powell's criminal conduct. (Def. Loss Ltr. 1).[11] Defense counsel obtained independent appraisals of each of the locations, proposed loss calculations, and advocated regarding adjustments. (Def. Loss Ltr. 1-2). As a result of defense counsel's advocacy, the loss and restitution amounts were reduced from over $6 million to $1.9 million. (Sent. Tr. 13). In light of this outcome, defense counsel cannot be said to have been ineffective under *Strickland*.

---

[11] A letter from defense counsel regarding loss is attached as Exhibit F.

Furthermore, Powell failed to bring these issues to the Court's attention when he had the opportunity. When the Court asked Powell during sentencing whether there he had "read and reviewed the presentence report," Powell responded that he had and raised no objections to the contents of the report. (Sent. Tr. 3). Powell's later, self-serving allegations that the report contained errors should be rejected as contrary to the record established at sentencing where Powell lodged no such objections. *See Doe*, 537 F.3d at 213 (affirming district court's denial of habeas petition where "the defendant's unequivocal admissions under oath [in open court] contradict his conclusory assertions [in support of his habeas petition]").

Powell is equally unable to establish prejudice with respect to defense counsel's sentencing advocacy. First, even if defense counsel had disputed these factual matters, there is no "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Powell does not even attempt to show prejudice in the Petition – and for good reason. The loss amount was contested prior to the drafting of the Agreement and well supported by the evidence. Any eleventh hour challenge at sentencing would have been frivolous and futile. Second, notwithstanding any putative shortcoming of defense counsel, the Court imposed a sentence that was fully supported by the relevant facts and circumstances. Specifically, the Court observed that Powell's crimes were "exceedingly serious" and "long-standing," causing substantial losses to his victims. (Sent. Tr. 11). The Court also noted Powell's corruption of public officials and his status as "an officer of th[e] court" who "took an oath to abide by the law and to engage in ethical behavior consistent with the highest standards of our profession." (Sent. Tr. 12-13). Because the sentence is fully supported by the record, Powell cannot establish any prejudice from defense counsel's alleged deficiencies at sentencing. *See United States v. Guerra*, 307 F. App'x 283, 288 (11th Cir. 2009) (finding no reversible error at

- 21 -

sentencing where the court had based its sentence on the "seriousness of [defendant]'s offense, [defendant]'s characteristics, and the need to impose a substantial sentence to deter future crimes"); *United States v. Flemings*, 668 F. Supp. 304, 306 (S.D.N.Y. 1987) ("Petitioner has also failed to show that any ineffective assistance of counsel prejudiced him at the sentencing, because the sentence was amply justified" by petitioner's record).

## CONCLUSION

Having presented nothing more than self-serving allegations in support of his Petition, Powell can establish neither that defense counsel performed below an objective standard of reasonableness, nor that he was prejudiced by the representation he received. Accordingly, the Petition should be denied without a hearing. Because Powell has not made a substantial showing of the denial of a constitutional right, no certificate of appealability should issue.

Dated:      New York, New York
            March 14, 2013

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney

                            By:         _____
                                        JUSTIN ANDERSON
                                        Assistant United States Attorney
                                        (212) 637-1035

cc:         Gary Schoer, Esq. (by e-mail and first class mail)

- 22 -

<u>CERTIFICATE OF SERVICE</u>

JUSTIN ANDERSON deposes and says that:

1.    I am employed in the Office of the United States Attorney for the Southern District

of New York.

2.    On today's date, I caused a copy of the foregoing memorandum of law and referenced

declarations to be served by e-mail and first class mail on defense counsel of record.

3.    I declare under penalty of perjury that the foregoing is true and correct, pursuant to

Title 28, United States Code, Section 1746.

Dated:    New York, New York
          March 14, 2013


_____
JUSTIN ANDERSON
Assistant United States Attorney
(212) 637-1035